UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

THEODORE W. SANFORD,          :
          Plaintiff,          :
                              :
     v.                       :     CA 07-183 M
                              :
MICHAEL J. ASTRUE,            :
COMMISSIONER, SOCIAL SECURITY :
ADMINISTRATION,               :
          Defendant.          :


## MEMORANDUM AND ORDER

This matter is before the Court on a request for judicial review of the decision of the Commissioner of Social Security ("the Commissioner"), denying Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), under § 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g) ("the Act").  Plaintiff Theodore W. Sanford ("Plaintiff") has filed a motion to reverse the decision of the Commissioner.  Defendant Michael J. Astrue ("Defendant") has filed a motion for an order affirming the decision of the Commissioner.  With the parties' consent, this case has been referred to a magistrate judge for all further proceedings and the entry of judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b).  For the reasons set forth herein, I find that the Commissioner's decision that Plaintiff is not disabled is supported by substantial evidence in the record and is free of legal error.  Accordingly, based on the following analysis, I order that Defendant's Motion for an Order Affirming the Decision of the Commissioner (Document ("Doc.") #8) ("Motion to Affirm") be granted and that Plaintiff's Motion to Reverse or Remand the Decision of the Commissioner (Doc. #6) ("Motion to Reverse or Remand") be denied.

**Facts and Travel**

Plaintiff was born in 1970.  (Record ("R.") at 46, 319)  He earned a general equivalency diploma ("GED") in 2002.  (R. at 64)  In the past, he has worked as a car salesperson and as a salesperson and delivery driver for Home Depot.  (R. at 61, 343)

Plaintiff filed applications for DIB and SSI on August 6, 2004, alleging disability since October 15, 1998,[1] due to Attention Deficit Hyperactivity Disorder ("ADHD"), anxiety disorder, and depression.  (R. at 46, 60, 319)  The applications were denied initially and on reconsideration.  (R. at 29, 30, 324, 330)  On December 13, 2006, an administrative law judge ("ALJ") conducted a hearing at which Plaintiff and a vocational expert ("VE") appeared and testified.  (R. at 336-59)  The ALJ issued a decision on January 29, 2007, finding that Plaintiff was not disabled.  (R. at 21)  The Appeals Council denied Plaintiff's request for review on March 22, 2007, (R. at 5-7), thereby rendering the ALJ's decision the final decision of the Commissioner, (R. at 5).  Plaintiff thereafter filed this action for judicial review.

**Issue**

The issue for determination is whether the decision of the Commissioner that Plaintiff is not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is free of legal error.

**Standard of Review**

The Court's role in reviewing the Commissioner's decision is limited.  Brown v. Apfel, 71 F.Supp.2d 28, 30 (D.R.I. 1999).  Although questions of law are reviewed *de novo*, the Commissioner's findings of fact, if supported by substantial

---

[1] Plaintiff's attorney amended the alleged onset date to June 23, 2004, at the administrative hearing on December 13, 2006.  (Record ("R.") at 339-40)

evidence in the record,[2] are conclusive.  Id. (citing 42 U.S.C. § 405(g)).  The determination of substantiality is based upon an evaluation of the record as a whole.  Id. (citing Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1999)("We must uphold the [Commissioner's] findings ... if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion.")(second alteration in original)).  The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "Indeed, the resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)(citing Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426 (1971))).

### Law

To qualify for DIB, a claimant must meet certain insured status requirements,[3] be younger than 65 years of age, file an application for benefits, and be under a disability as defined by the Act.  See 42 U.S.C. § 423(a).  An individual is eligible to receive SSI if he is aged, blind, or disabled and meets certain income requirements.  See 42 U.S.C. § 1382(a).

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically

---

[2] The Supreme Court has defined substantial evidence as "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 217 (1938)); see also Suranie v. Sullivan, 787 F.Supp. 287, 289 (D.R.I. 1992).

[3] The ALJ stated that Plaintiff met the nondisability requirements and was insured for benefits through December 31, 2006.  (R. at 15)

determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months ...." 42 U.S.C. 423(d)(1)(A). A claimant's impairment must be of such severity that he is unable to perform his previous work or any other kind of substantial gainful employment which exists in the national economy. See 42 U.S.C. § 423(d)(2)(A). "An impairment or combination of impairments is not severe if it does not significantly limit [a claimant's] physical or mental ability to do basic work activities."[4] 20 C.F.R. §§ 404.1521(a), 416.921(a) (2008).[5] A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence. See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 404.1528(a) (2008)("Your statements alone are not enough to establish that there is a physical or mental impairment.").

The Social Security regulations prescribe a five-step inquiry for use in determining whether a claimant is disabled.

---

[4] The regulations describe "basic work activities" as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b) (2008). Examples of these include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
> (2) Capacities for seeing, hearing, and speaking;
> (3) Understanding, carrying out, and remembering simple instructions;
> (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and
> (6) Dealing with changes in a routine work setting.

Id.

[5] The Social Security Administration ("SSA") has promulgated identical sets of regulations governing eligibility for DIB and SSI. See McDonald v. Sec'y of Health & Human Servs., 795 F.2d 1118, 1120 n.1 (1st Cir. 1986). For simplicity, the Court hereafter will cite only to one set of regulations. See id.

See 20 C.F.R. § 404.1520(a) (2008); see also Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S.Ct. 2287, 2291 (1987); Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001).  Pursuant to that scheme, the Commissioner must determine sequentially: (1) whether the claimant is presently engaged in substantial gainful work activity; (2) whether he has a severe impairment; (3) whether his impairment meets or equals one of the Commissioner's listed impairments; (4) whether he is able to perform his past relevant work; and (5) whether he remains capable of performing any work within the economy.  See 20 C.F.R. § 404.1520(b)-(g).  The evaluation may be terminated at any step.  See Seavey v. Barnhart, 276 F.3d at 5.  "The applicant has the burden of production and proof at the first four steps of the process.  If the applicant has met his or her burden at the first four steps, the Commissioner then has the burden at Step 5 of coming forward with evidence of specific jobs in the national economy that the applicant can still perform."  Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001).

## ALJ's Decision

Following the familiar sequential analysis, the ALJ in the instant case made the following findings: that Plaintiff had not engaged in substantial gainful activity since the alleged onset of his disability on June 23, 2004, (R. at 15); that Plaintiff's depression and anxiety were severe, (id.), but not severe enough to meet or equal any listed impairment, (R. at 16); that Plaintiff was able to perform a wide range of activity at all exertional levels, but had moderate limitations in maintaining attention and concentration and in dealing appropriately with the public, co-workers, and supervisors, (R. at 17); that he was unable to perform any past relevant work, (R. at 20); that Plaintiff was born in 1970 and was thirty-four years old, which is defined as a younger individual age eighteen to forty-four on

June 23, 2004, the alleged onset date, (<u>id.</u>); that he had at least a high school education and was able to communicate in English, (<u>id.</u>); that transferability of job skills was not material to the determination of disability because using the Medical-Vocational Guidelines as a framework supported a finding that Plaintiff was not disabled whether or not he had transferable job skills, (<u>id.</u>); that there were jobs existing in significant numbers in the national economy that Plaintiff could perform, (<u>id.</u>); and that Plaintiff was not under a "disability," as defined by the Act, from June 23, 2004, through the date of the decision, (R. at 21).

### Errors Claimed

Plaintiff alleges that the ALJ's mental residual functional capacity findings are not supported by substantial evidence. Specifically, Plaintiff argues that the ALJ erred in: 1) giving inadequate weight to the opinions of the treating therapist, the primary physician, and the consulting psychiatrist; 2) relying on the opinions of the state agency psychologists who had not seen all the evidence; and 3) impermissibly analyzing the medical data and coming to his own medical conclusions.

### Discussion

**I.  Substantial evidence supports the weight which the ALJ gave to the opinions of Dr. Sullivan, Dr. Meer, and Therapist Waldron-Mello**

**A.  Dr. Sullivan**

The ALJ gave "very little evidentiary weight to the opinion of Dr. James K. Sullivan [("Dr. Sullivan")]," (R. at 18), a consulting psychiatrist, <u>see</u> <u>id.</u>  The ALJ discounted Dr. Sullivan's opinion for the following reasons.  First, Dr. Sullivan only saw Plaintiff on two occasions and had never treated him.  (<u>Id.</u>)  Second, Dr. Sullivan's conclusions following his April 9, 2005, evaluation of Plaintiff were inconsistent with

detailed treatment notes from the East Bay Mental Health Clinic ("EBMHC") from around the same time.  (Id.)(citing treatment notes from six weeks before and four weeks after Dr. Sullivan's evaluation).[6]  Third, the degree of impairment which Dr. Sullivan described in his report was not consistent with the treating source notes, "and consideration of the record as a whole reveals Dr. Sullivan's report to have been influenced by bias."  (R. at 19)

The ALJ found no reason to credit Dr. Sullivan's second report with less bias or more credibility than his earlier report.  (R. at 19)  The ALJ noted that the evaluation was again arranged at the request of Plaintiff's attorney, that it appeared formulaic, and that it drew largely on findings from the earlier April 2005 evaluation which the ALJ deemed lacking in reliability.  (Id.)  Although not specifically mentioned by the ALJ, it bears mentioning that Dr. Sullivan formed his opinion regarding Plaintiff's level of limitation based solely on Plaintiff's subjective complaints without any formal testing. (R. at 124-30, 312-16)

Plaintiff argues that the ALJ's reasons for giving reduced weight to Dr. Sullivan's opinion were erroneous.  Plaintiff focuses narrowly on the ALJ's finding that Dr. Sullivan was influenced by bias and asserts that this one finding lacks

---

[6] After citing specific EBMHC treatment notes which preceded and followed Dr. Sullivan's evaluation, the ALJ wrote:

> Thus, the claimant is described close in time both before and after Dr. Sullivan's report as reporting no depressive symptoms; with some variable anxiety probably brought on by a self-initiated change in medication, and even then not to a significantly limiting degree.  These reports are entirely consistent with a patient who is doing well on (and even, though to a lesser degree, off) medication and counseling, experiencing no depression and only symptoms of anxiety which leave him "able to get out and about much more frequently."

(R. at 18)(quoting R. at 144).

support.  According to Plaintiff, the only reasons for the
finding of bias were that Plaintiff's attorney paid for the
evaluations and that the ALJ believed Dr. Sullivan's opinions
were inconsistent with notes from treatment providers.

As already noted above, the factors which the ALJ considered
in determining the weight to be given to Dr. Sullivan's opinion
are not as limited as Plaintiff contends.  The ALJ first
considered the length and nature of Plaintiff's treatment
relationship with Dr. Sullivan and found that "Dr. Sullivan
conducted psychiatric evaluations on April 9, 2005[,] and
November 15, 2006.  He has not seen [Plaintiff] otherwise, and
has never treated him."  (R. at 18)  These are valid
considerations in determining the weight to be given to a
physician's opinion.  See 20 C.F.R. §§ 404.1527(d)(2),
416.927(d)(2) (2008) (noting that the ALJ must consider the
length and frequency of the treatment relationship as well as its
nature and extent).

The ALJ next considered how consistent Dr. Sullivan's
findings were with the other evidence in the record from
Plaintiff's treating source.  (R. at 18)  The ALJ found that Dr.
Sullivan's conclusions were inconsistent with the detailed
treatment notes from EBMHC during the weeks preceding and
following the evaluation.  Plaintiff disputes that they were
inconsistent and cites portions of the notes as being consistent
with Dr. Sullivan's conclusions.  See Plaintiff's Memorandum in
Support of his Motion to Reverse the Decision of the Commissioner
(Doc. #7) ("Plaintiff's Mem.") at 13.

While it is true that there are some statements in the
treatment notes which may not be inconsistent with Dr. Sullivan's
conclusions,[7] there are other statements which clearly are

---

[7] Plaintiff acknowledges that "at times, the records from East Bay
Mental Health note that Mr. Sanford denied depression," Plaintiff's
Memorandum in Support of his Motion to Reverse the Decision of the

inconsistent with his conclusions.  As the ALJ noted, on February 23, 2005, Plaintiff was recorded as "reporting *no* depression." (R. at 18)(quoting R. at 140).  Although Plaintiff indicated that he continued to feel useless and sad because of his lack of employment, the clinician[8] recorded that Plaintiff "has a plan in place to address this problem."  (R. at 140)  Plaintiff reported a recent problem with sleep but felt that it was resolving. (Id.)  Plaintiff did not report any symptoms of ADHD and had no suicidal ideation, homicidal ideation, or psychosis.  (Id.)  The clinician noted that Plaintiff "will continue on his current medications as they are efficacious," (id.), and that "[t]here are no side effects per the patient ...," (id.).  The treatment plan expressed in the note reflects that Plaintiff is to continue with the current medications and "begin the Men's 4-M Group on Monday night ...."  (Id.)

The May 11, 2005, treatment note similarly indicates that Plaintiff "denies depression," (R. at 143, 144), although it also states that he is "complaining of more anxiety," (R. at 143). With respect to this anxiety, the clinician noted that Plaintiff had discontinued Bupropion-SR on his own in February because he thought that it was making him irritable.  (Id.)  The clinician pointed out to Plaintiff that Bupropion-SR may have been

---

Commissioner ("Plaintiff's Mem.") at 15, but notes that "at other times the records reflect increased depression and anxiety," id. (citing R. at 136, 138, 141, 143).  However, two of the four notes which Plaintiff cites are from the summer of 2004, some eight to nine months prior to Dr. Sullivan's April 2005 evaluation.  (R. at 136, 138)  The third note cited by Plaintiff, (R. at 141), although reflecting an increase in anxiety, does not reflect an increase in depression, (id.).  In fact, on the following page (a continuation of the same May 25, 2005, treatment note) Dr. Sullivan states that "[t]he patient is reporting little depression at this session," (R. at 142). The May 11, 2005, treatment note similarly states that "the patient denies depression," (R. at 143), but "is complaining of more anxiety," (id.).

[8] The clinician was Catherine A. Viens, PCNS, RN ("Nurse Viens").  (R. at 140)  PCNS presumably means psychiatric clinical nurse specialist.

providing relief from anxiety, but Plaintiff refused to resume this medication.  (Id.)  The clinician also noted that Plaintiff reported "anxiety episodes but no panic.  He is able to get out and about much more frequently, reporting a reduction in agoraphobia."  (R. at 144)

In short, the ALJ's finding of an inconsistency between Dr. Sullivan's conclusion and the treatment notes made around the same period is supported by the record.  The overall impression conveyed by these notes is closer to the ALJ's description of "a patient who is doing well on (and even, though to a lesser degree, off) medication and counseling, experiencing no depression and only symptoms of anxiety which leave him 'able to get out and about much more frequently,'" (R. at 18), than to Dr. Sullivan's assessment that Plaintiff "continues to experience debilitating symptoms of anxiety, depression and intermittent panic symptoms ... patient is totally disabled regarding his ability to maintain the functions and responsibilities associated with full-time employment," (R. at 128).

As for Plaintiff's complaint that the ALJ had no basis for finding that Dr. Sullivan's report was influenced by bias, the ALJ explained in a footnote that it was possible that Plaintiff presented differently to Dr. Sullivan than to his treating clinicians and that this could explain the disparity between Dr. Sullivan's report and the rest of the record.[9]  (R. at 19 n.3)

---

[9] In the footnote, the ALJ stated:

> It is possible, of course, especially in the context of an examination arranged specifically to produce evidence in support of his disability claim, that the claimant presented entirely differently to Dr. Sullivan than he did on multiple other occasions, near in time, in his meetings with treating clinicians.  This *possible* explanation of the disparity between Dr. Sullivan's report an[d] the rest of the record would lessen evidence for inference of *bias on the part of Dr. Sullivan*, but would not, of course, make his report any more reliable, as it would cast doubt instead on the *claimant's* credibility.  While it is not necessary to choose between

10

As the ALJ validly observed, this "would not, of course, make [Dr. Sullivan's] report any more reliable, as it would cast doubt on the *claimant's* credibility." (Id.)  Thus, the ALJ specifically allowed for the possibility that bias was not the explanation for the inconsistency between Dr. Sullivan's opinion and the other evidence in the record.  Therefore, it is unnecessary for the Court to resolve that issue.  What matters is that there was an inconsistency between the treatment records and that this inconsistency was a permissible basis for the ALJ to discount the opinions stated in Dr. Sullivan's April 2005 evaluation.

With respect to Dr. Sullivan's November 2006 evaluation, the ALJ was certainly entitled to consider the fact that this report largely echoed Dr. Sullivan's previous report and that the ALJ had found the earlier report to be inconsistent with the treatment notes from EBMHC.  (R. at 19)  It was also not inappropriate for the ALJ to note that Dr. Sullivan's relationship with Plaintiff remained the same, i.e., that it was not a treating relationship but a relationship established solely for the purpose of Plaintiff's disability application.  Bearing in mind the ALJ's explanatory footnote, his statement that "[t]here is no reason to credit Dr. Sullivan's November evaluation with less bias or more credibility than the earlier report," (id.), is unobjectionable.  Indeed, the statement strikes the Court as reasonable.

In summary, there is substantial evidence in the record which supports the ALJ's decision to afford little weight to the opinion of Dr. Sullivan.  The ALJ did not discount the opinion solely because it was obtained as a result of a referral by

---

these alternate explanations for the inconsistency between Dr. Sullivan and the rest of the record, it is *not* inferred, on the basis of this evidence, that the claimant is not credible.

(R. at 19 n.3)

Plaintiff's counsel.  See Arroyo v. Barnhart, 295 F.Supp.2d 214,
221 (D. Mass. 2003)(explaining that an ALJ's "decision can still
pass muster if the other reasons given to accord medical reports
little weight are adequately supported").  As explained above,
the ALJ gave other reasons.  Cf. Gonzalez Perez v. Secretary of
Health & Human Servs., 812 F.2d 747, 749 (1st Cir. 1987)
("Something more substantive than just the timing and impetus of
medical reports obtained after a claim is filed must support an
ALJ's decision to discredit them.").  Plaintiff's first claim of
error is, therefore, rejected.

**B.  Dr. Meer and Therpist Waldron-Mello**

The ALJ considered the evaluations of Dr. Omar Meer ("Dr.
Meer") and Mary Waldron-Mello, LICSW ("Ms. Waldron-Mello"), but
did not find them persuasive.  (R. at 19)  As both of these
individuals opined that Plaintiff experienced moderate to severe
symptoms of depression and anxiety and that he was unable to
sustain, competitive full-time employment, the ALJ chose to
address their opinions together.  He explained his reasoning as
stated below:

> As indicated above,[10] actual therapy records do *not*
> reflect ongoing symptoms of such severity.  Moreover, the
> claimant has been consistently maintained on Zoloft and
> Klonopin for several years; treatment notes show (as
> discussed above) little or no depression, and anxiety has
> been controlled to such a satisfactory degree with
> treatment that medications have been continued (at least
> as prescribed - the claimant has on occasion discontinued
> medication on his own, as discussed, *supra*) because they
> were found to be effective and without side effects.  If
> the claimant's symptoms were severe and debilitating, as
> described in the prepared-for-litigation forms cited
> here, the claimant surely would have received more
> aggressive treatment, e.g., at least trials with other
> anti-anxiety medications, perhaps more frequent or
> intense counseling.  If the claimant was impaired to the

---

[10] The ALJ is referring here to his earlier discussion of the records
from EBMHC.  See (R. at 18)

12

degree alleged, treatment notes would include reports of
severity of symptoms which do not appear in the record.

(R. at 19)

Plaintiff argues that Ms. Waldron-Mello's records reflect
that the symptoms are present even if descriptive terms as to
their severity are not.  However, the degree to which a medical
opinion is supported by the underlying treatment records may
properly be considered by an ALJ in determining the weight to be
given to that opinion.  The ALJ could properly consider whether
the moderately severe impairment and symptoms which Ms. Waldron-
Mello assessed Plaintiff as having, (R. at 257-61), were
reflected in her treatment notes, (R. at 248-56).

Plaintiff challenges the ALJ's reasoning that if Plaintiff's
symptoms were as severe as he alleges, Plaintiff would not have
been continued on the same medications but new medications or
treatments would have been sought.  In support of this argument,
Plaintiff cites the fact that he did have trials of other
medications as well as different titrations of his medications.
While it is true that the record reflects some changes in
medication through June 8, 2005, the fact remains that Plaintiff
has been consistently maintained on Zoloft and Klonopin for
several years and that these medications were deemed effective
and without significant side effects by his treatment providers.

Plaintiff argues that the ALJ appeared to have objected to
the opinions of Dr. Meer and Ms. Waldron-Mello because the
assessments had been "prepared at the request of counsel for
purposes of supporting the claimant's disability claim ...."  (R.
at 19); see also Plaintiff's Mem. at 16.  However, the ALJ did
not state that he discounted the opinions for this reason, and
the Court declines to read such reason into his Decision.  More
importantly, as previously noted, even if the ALJ intended to
express disfavor by describing the reports as prepared at the
request of counsel, such reference is not fatal so long as he

13

provided other reasons for discounting the opinions which are valid.  This is the case here.  The ALJ found the opinions of Dr. Meer and Ms. Waldron-Mello to be inconsistent with the actual therapy records, especially those from EBMHC.  While there is less inconsistency in Ms. Waldron-Mello's notes,[11] those notes do not contain information regarding the severity of Plaintiff's symptoms.  Her opinion that Plaintiff cannot sustain full-time employment, (R. at 259), is, at most, only partially supported by her treatment notes, (R. at 248-56).

Dr. Meer's opinion is supported only to a limited degree by his treatment notes which consist of three preprinted forms with relatively brief notations.  (R. at 208, 210, 211)  The first treatment note reflects that Plaintiff was referred by Ms. Waldron-Mello "for medical management," (R. at 208), and all three notes reflect this degree of involvement, (R. at 208, 210, 211).  After his first visit, Plaintiff was instructed to return in one to two months.  (R. at 208)  There is further evidence suggesting that Dr. Meer's familiarity with Plaintiff may have been limited.  In opining on December 6, 2005, that Plaintiff could not sustain competitive employment on a full-time basis, (R. at 167), Dr. Meer identified Plaintiff's symptoms as "poor energy/sleep disorder - fatigue - sexual dysfunction," (R. at 166), and rated the severity of these symptoms as severe, (R. at 166).  While it is true that Plaintiff reported fatigue and insomnia when he saw Dr. Meer on December 6, 2005, Plaintiff

---

[11] Plaintiff asserts that there is nothing inconsistent between Ms. Waldron-Mello's treatment notes and her opinions, as expressed in her questionnaire and letter.  See Plaintiff's Mem. at 15.  The Court is not entirely persuaded that this is so.  The notes reflect that Ms. Waldron-Mello appeared to believe that Plaintiff was capable of teaching and supervising Boy Scouts, (R. at 254), even though she assessed him as having a moderately severe impairment in his "ability to attend meetings (church, lodge, etc[.]), work around the house, socialize with friends and neighbors, etc.," (R. at 260).

denied having such symptoms in September and November 2005.[12]
(R. at 208, 210)  Thus, at least three of the four symptoms,
which Dr. Meer rated as severe, were not present during most of
the period covered by his treatment notes (September 13, 2005, to
December 6, 2005).  (R. at 208-11)  In light of this, Dr. Meer's
assessment of Plaintiff's condition could reasonably be viewed as
conclusory and lacking substantial support.

In short, the Court cannot say that the reasons given by the
ALJ for finding the opinions of Dr. Meer and Ms. Waldron-Mello
unpersuasive lack support in the record or constitute legal
error.  Accordingly, Plaintiff's second claim of error must be
rejected.

## II.  Substantial Evidence Supports the ALJ's RFC

Plaintiff argues that the state agency opinions on which the
ALJ relied in determining Plaintiff's RFC were outdated because
the last of these opinions was rendered on September 6, 2005, by
J. Stephen Clifford, Ph.D. ("Dr. Clifford"), (R. at 149), and
that this predated the treatment notes and opinions of Ms.
Waldron-Mello, Dr. Meer, and the second report from Dr. Sullivan.
See Plaintiff's Mem. at 17.  Plaintiff quotes an unpublished, per
curiam First Circuit opinion, Alcantara v. Astrue, No. 07-1056,
slip. op. at 4 (1st Cir. Dec. 12, 2007), for the proposition
that: "Absent a medical advisor's or consultant's assessment of
the full record, the ALJ effectively substituted his own judgment
for medical opinion."  Plaintiff's Mem. at 17.  Plaintiff also
cites Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999)("The
ALJ's findings of fact are conclusive when supported by
substantial evidence, 42 U.S.C. § 405(g), but are not conclusive
when derived by ignoring evidence, misapplying the law, or
judging matters entrusted to experts."), and Rivera-Torres v.

---

[12] Plaintiff testified at the hearing that his medications caused him
to be fatigued, (R. at 348), and that he was "very tired during the
day," (R. at 353), because he "can't get a good night's sleep," (id.).

15

<u>Secretary of Health & Human Services</u>, 837 F.2d 4, 7 (1st Cir. 1988)("[W]e think the ALJ, a lay factfinder, lacks sufficient expertise to conclude claimant has the ability to be on his feet all day, constantly bending and lifting 25 pound weights. Rather, an explanation of claimant's functional capacity from a doctor is needed.").

The fact that non-examining reviewing medical experts did not have a complete medical record before them at the time of their reviews has in some instances caused this Court to find that the opinions of such experts cannot constitute substantial evidence supporting the ALJ's decision.  <u>See</u> <u>Magiera v. Astrue</u>, CA 05-310 M, slip op. at 24 (D.R.I. Mar. 9, 2007); <u>Lyon v. Barnhart</u>, CA 05-193 T, slip op. at 18-19 (D.R.I. Sept. 29, 2006) (finding that the reports of non-examining state agency doctors cannot constitute substantial evidence because, among other reasons, their reports were submitted more than two years before the hearing at issue and a significant amount of medical evidence in the record could not have been available to one or both state agency physicians).  Nevertheless, to render a state agency physician's opinion irrelevant merely because s/he was not privy to updated medical records would defy logic and be a formula for paralysis.  <u>See</u> <u>Kendrick v. Shalala</u>, 998 F.2d 455, 456-57 (7th Cir. 1993)(noting that no record is ever "complete" as a claimant may always obtain another medical examination and that "[t]aking 'complete record' literally would be a formula for paralysis").  Thus, the Court looks at the evidence which Dr. Clifford did not see and makes a judgment as to whether it is sufficiently significant that it might alter his conclusions.  In this case, the Court concludes that it would not.

With regard to Dr. Sullivan's second report, (R. at 312-18), as the ALJ correctly noted, it largely repeated the findings and opinions expressed in the first report, (R. at 124-30).  The second report conveys no sense of a worsening of Plaintiff's

condition, but simply a continuation of the condition which Dr. Sullivan described in April of 2005.  Dr. Sullivan again states that Plaintiff's "[m]emory and cognition are grossly intact," (R. at 315), that he has poor concentration, (id.), that he is often distracted which leads to poor task completion, (id.), and that he describes being irritable, (id.).  These findings were also expressed in the first report, (R. at 128-29), and Dr. Clifford specifically commented upon these findings and took them into consideration in making his functional capacity assessment of Plaintiff, (R. at 149).  Given the similarity between the two reports, there is little reason to believe that the second report from Dr. Sullivan would have affected Dr. Clifford's assessment of Plaintiff's functional capability.

As for Dr. Meer, his involvement with Plaintiff was largely concerned with the management of Plaintiff's medication, and that medication did not change significantly after Dr. Clifford's review of the record.  Dr. Meer's treatment notes are brief and provide little insight into Plaintiff's ability to function. While Dr. Meer opined that Plaintiff was unable to maintain full-time employment, this statement is conclusory and adds little to the medical evidence which Dr. Clifford was tasked with considering.

The treatment notes of Ms. Waldron-Mello similarly do not indicate any significant change in Plaintiff's mental condition from the time he was treated by Nurse Viens.  Compare (R. at 134-46) with (R. at 248-56).  The notes reflect varying levels of depression and anxiety.  At times while treating with Nurse Viens, Plaintiff reported feeling more depressed, (R. at 136), and anxious, (R. at 139, 141, 143), and at other times he reported little or no depression, (R. at 140, 142, 143), and having only "some mild anxiety without any full blown panic attacks," (R. at 134), or simply "some mild anxiety," (R. at 138).  Ms. Waldron-Mello also noted variability in Plaintiff's

17

mental status.  She wrote on December 30, 2005, "as usual [mental status] varied with several issues affecting mood," (R. at 248); on March 30, 2006, "uses humor to hide behind feeling of inadequacy," (R. at 250); on May 16, 2006, "appropriate to situations," (R. at 251); and on October 26, 2006, "appropriate – makes comment[] that he takes things day by day," (R. at 255). While Ms. Waldron-Mello also noted that Plaintiff reported feeling frustrated, (R. at 249), inadequate, (R. at 250), sad, (id.), fatigued, (R. at 252), and hopeless, (R. at 253), similar observations appear in Nurse Viens' notes: on July 21, 2004, "feeling depressed," (R. at 136), and "feeling 'useless'," (id.); on August 25, 2004, "moderate amount of fatigue," (R. at 138); on May 11, 2005, "feels very tired," (R. at 143), and "fatigued," (R. at 144).

Thus, in contrast to the situation in Alcantara, where "[t]he record repeatedly indicated that the [claimant] deteriorated with her parents' deaths," Alcantara, No. 07-1056, slip. op. at 4, and the reviewing psychologist "appear[ed] to have been unaware of the mother's death and the issue it raised," id., here the record does not reflect a deterioration in Plaintiff's condition from the time Dr. Clifford reviewed Plaintiff's medical record.  Accordingly, Plaintiff's claim of error based on the ALJ's reliance on Dr. Clifford's opinion in determining Plaintiff's RFC is therefore rejected.

**III.  The ALJ did not impermissibly analyze the medical data and come to his own medical conclusions.**

Plaintiff contends that the ALJ:

> evaluate[d] the medical evidence on his own and determine[d] that the plaintiff's symptoms were not severe, or moderately severe.  He acted as his own medical expert and substituted his own opinion for that of the treating therapist, the treating physician and the consultative psychiatrist.  All three had given consistent opinions regarding Mr. Sandford's functioning

18

> and all three agreed his limitations were severe enough
> to preclude work.  The ALJ had no business substituting
> his opinion for theirs.

Plaintiff's Mem. at 16.

The question of whether a claimant is disabled is a matter reserved to the Commissioner.  See Rodriquez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); see also 20 C.F.R. § 404.1527(e).  The ALJ was not required to unquestioningly accept the medical opinions to which Plaintiff refers in the excerpt reproduced above.  The Court has already determined that the ALJ's decision to discount these medical opinions is supported by substantial evidence that his action in doing so did not constitute legal error.  The Court has also already determined that the ALJ could permissibly rely upon the opinion of Dr. Clifford as a basis for determining Plaintiff's RFC because there was no substantial deterioration or worsening of Plaintiff's mental functioning reflected in the medical records and opinions which postdated Dr. Clifford's review.  To the extent that this claim of error incorporates Plaintiff's prior arguments, they are rejected for the same reasons already expressed.

While it is true that an ALJ is unqualified to translate raw medical data into functional terms, Nguyen v. Chater, 172 F.3d at 35, this principle does not mean that the Commissioner is precluded from rendering common sense judgments about functional capacity based on medical findings, so long as he does not overstep the bounds of a lay person's competence and render a medical judgment, see Gordils v. Sec'y of Health & Human Servs., 921 F.2d 327, 329 (1st Cir. 1990).  Here the Court does not find that the ALJ overstepped his bounds in evaluating the medical evidence and determining Plaintiff's RFC.

Plaintiff appears to take particular issue with the ALJ's statement that if Plaintiff's "symptoms were severe and

19

debilitating, as described in the prepared-for-litigation forms cited here, the claimant surely would have received more aggressive treatment, e.g., at least trials with other anti-anxiety medications, perhaps more frequent or intense counseling." Plaintiff's Mem. at 14 (quoting R. at 19). However, this observation must be considered in context. In the preceding sentences, the ALJ explained his other reasons for finding the assessments of Dr. Meer and Ms. Waldron-Mello unpersuasive. The ALJ validly noted that "actual therapy records do *not* reflect ongoing symptoms of such severity." (R. at 19) He also correctly noted that Plaintiff had been consistently maintained on Zoloft and Klonopin and that these medications were continued because they were found to be effective and without side effects. (Id.) The ALJ followed the observation with the statement, which is reasonable to this Court, that "[i]f the claimant was impaired to the degree alleged, treatment notes would include reports of severity of symptoms which do not appear in this record." (Id.) Reading the Decision as a whole, the Court concludes that the ALJ did not impermissibly analyze medical data and did not act as his own expert. Plaintiff's third claim of error is accordingly rejected.

### Conclusion

The ALJ's determination that Plaintiff was not disabled within the meaning of the Act, as amended, is supported by substantial evidence in the record and is free of legal error. Accordingly, Defendant's Motion to Affirm is GRANTED and Plaintiff's Motion to Reverse or Remand is DENIED.

So ordered.

/s/ David L. Martin
DAVID L. MARTIN

United States Magistrate Judge
March 30, 2009